UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | JS-6 |
|---|---|---|---|
| Case No. | CV 19-10877 PSG (JPRx) | Date | March 19, 2020 |
| Title | Kim Kardashian West v. iHandy Ltd. et al. | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge | |
|---|---|---|
| Wendy Hernandez | | Not Reported |
| Deputy Clerk | | Court Reporter |
| Attorneys Present for Plaintiff(s): | | Attorneys Present for Defendant(s): |
| Not Present | | Not Present |

**Proceedings (In Chambers):** The Court GRANTS the motion to remand

Before the Court is Plaintiff Kim Kardashian West's ("Plaintiff") motion to remand. *See* Dkt. # 15 ("*Mot.*"). Defendants iHandy Ltd. ("iHandy") and TapLogic, Inc. ("TapLogic") (collectively, "Defendants") oppose, *see* Dkt. # 20 ("*Opp.*"), and Plaintiff replied, *see* Dkt. # 22 ("*Reply*"). The Court finds the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15. Having considered the moving, opposing, and reply papers, the Court **GRANTS** the motion to remand.

I.     Background

       A.     Factual Background

This case is about Defendants' alleged misappropriation and unauthorized use of Plaintiff's image and likeness to advertise and promote Defendants' product, a mobile app. Plaintiff has spent considerable time, energy and resources developing her career and is a world-wide instantly recognized and popular media and entertainment personality, model, influencer, businesswoman and entrepreneur. *See Complaint*, Dkt. # 1-4 ("*Compl.*"), ¶ 14. Plaintiff and her family, currently and over the past twelve continual years, appear in the pop-culture phenomenon E! reality hit television series *Keeping Up with the Kardashians*, and Plaintiff has been featured in spin-off shows. *Id.* ¶ 15. Plaintiff has also launched a cosmetics company and beauty line, and fragrance line. *Id.* Plaintiff has "create[d] considerable commercial value in her identity," and the marketable product of her labor is "the ability of [Plaintiff's] photograph, likeness and/or name to attract attention and evoke a desired response in a particular consumer audience," including social media users. *Id.* ¶¶ 15–17. Plaintiff is "highly paid for her select endorsement or sponsorship of or affiliation with products, including of beauty industry and social media related products or services." *Id.* ¶ 17. She is highly paid for her participation in social media

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-10877 PSG (JPRx) | Date | March 19, 2020 |
|---|---|---|---|
| Title | Kim Kardashian West v. iHandy Ltd. et al. | | |

campaigns and product endorsements and advertisements. *Id.* Plaintiff maintains an active online social media presence with over 148 million Instagram followers. *Id.* ¶ 18.

On October 31, 2017, a photograph was captured of Plaintiff while standing in her bedroom, with her eyes shut, and displaying her applied facial make-up (the "Photograph"). *Id.* Plaintiff posted the Photograph on her own Instagram. *Id.* The Photograph has received more 2,276,940 likes and was featured exclusively on Plaintiff's official social media pages to display and promote her beauty cosmetics site. *Id.*

Defendants are mobile app developers and provide an image and face beauty modifier mobile app, the "Sweet Cam" and "Sweet Camera" App (the "App"). *Id.* ¶ 20. Defendants made a copy of the Photograph and cropped, zoomed, slightly rotated, and loaded the Photograph in their App, and created a computerized product exhibition video displaying the use and editing of the Photograph using the App's photo-editing and manipulation features (the "App Advertisements"). *Id.* ¶ 24. Defendants' App Advertisements featuring the Photograph displayed the Sweet Cam App logo and links to their Instagram account and hyperlink to the products in the Apple App store. *Id.* In or about September 2019, Defendants published the App Advertisements to advertise and promote their App products and services. *Id.* ¶ 25. These were posted in targeted sponsored Instagram advertisements. *Id.*

After repeated demands on behalf of Plaintiff, Defendants claimed to have removed their display of the App Advertisements. *Id.* ¶ 29.

B.    Procedural Background

On October 30, 2019, Plaintiff filed a complaint against Defendants in the Los Angeles County Superior Court. *See generally id.* Plaintiff brought one cause of action for misappropriation of the common law right of publicity. *See id.* ¶¶ 36–44. Plaintiff alleged that as a direct and proximate result of Defendants' acts, Plaintiff has been damaged in an amount in excess of ten million dollars. *See id.* ¶ 41.

On December 26, 2019, the action was removed to this Court. *See Notice of Removal*, Dkt. # 1 ("*NOR*"). Removal was based on diversity of citizenship pursuant to 28 U.S.C. § 1332, as well as on federal question jurisdiction pursuant to 28 U.S.C. § 1331 and the Copyright Act, 17 U.S.C. §§ 101, et seq. *See generally id*.

Plaintiff now moves to remand. *See generally Mot*.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-10877 PSG (JPRx) | Date | March 19, 2020 |
|---|---|---|---|
| Title | Kim Kardashian West v. iHandy Ltd. et al. | | |

II.     Legal Standard

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (internal quotation marks omitted). Under 28 U.S.C. § 1441, a defendant may remove a civil action from state court to federal district court only if the federal court has subject matter jurisdiction over the case. *See City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 163 (1997) ("The propriety of removal thus depends on whether the case originally could have been filed in federal court."). The case shall be remanded to state court if at any time before final judgment it appears a removing court lacks subject matter jurisdiction. *See* 28 U.S.C. § 1447(c); *Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund*, 500 U.S. 72, 87 (1991). Courts strictly construe the removal statute against removal jurisdiction. *See Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1087 (9th Cir. 2009); *Luther v. Countrywide Home Loans Servicing, LP*, 533 F.3d 1031, 1034 (9th Cir. 2008). "A defendant seeking removal has the burden to establish that removal is proper and any doubt is resolved against removability." *Luther*, 533 F.3d at 1034; *see also Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009) ("[A]ny doubt about the right of removal requires resolution in favor of remand."). Citizenship is tested at the time of removal. *See, e.g.*, *Spencer v. U.S. Dist. Court for N. Dist. of Ca.*, 393 F.3d 867, 871 (9th Cir. 2004) ("Challenges to removal jurisdiction require an inquiry into the circumstances at the time the notice of removal is filed."); *Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939).

III.    Discussion

Defendants assert that this Court has jurisdiction on two bases: (1) diversity of citizenship exists; and (2) federal question jurisdiction exists because the facts alleged in the complaint sound in copyright, and the right of publicity cause of action is preempted by the Copyright Act. *See generally NOR*. Plaintiff challenges both bases of jurisdiction. *See generally Mot*. The Court takes them in turn.

    A.      Diversity of Citizenship

For a federal court to exercise diversity jurisdiction, there must be "complete" diversity between the parties and the $75,000 amount in controversy requirement must be met. *See Strawbridge v. Curtis*, 7 U.S. 267, 267 (3 Cranch) (1806); 28 U.S.C. § 1332(a). For the purposes of diversity jurisdiction, a corporation is deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business. *See* 28 U.S.C. § 1332(c)(1).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-10877 PSG (JPRx) | Date | March 19, 2020 |
|---|---|---|---|
| Title | Kim Kardashian West v. iHandy Ltd. et al. | | |

The Notice of Removal asserts that complete diversity exists between the parties and the amount in controversy is satisfied. *See generally NOR*. The parties do not dispute that the amount in controversy requirement is satisfied, as Plaintiff's complaint asserts that Plaintiff has been damaged in an amount in excess of ten million dollars. *See Compl.* ¶ 41; *see generally Mot*. The Notice of Removal asserts that Defendant iHandy is a corporation organized in Hong Kong with its principal place of business in China, and thus iHandy is a foreign citizen; that Defendant TapLogic is a corporation organized in Delaware with its principal place of business in China, and thus TapLogic is a citizen of Delaware[1]; and that Plaintiff is a citizen of California. *See NOR* ¶¶ 6–11. Plaintiff asserts that TapLogic is a citizen of California because its principal place of business is in California. *See Mot.* 7. Thus the parties' dispute centers on whether TapLogic's principal place of business is in California or China.

As articulated by the Supreme Court in adopting the "nerve center" test of corporate citizenship, the "'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010). Typically, a corporation's "nerve center" is "the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination." *Id.* at 93. As an example, the Supreme Court noted that "if the bulk of a company's business activities visible to the public take place in New Jersey, while its top officers direct those activities just across the river in New York, the 'principal place of business' is New York." *Id.* at 96.

Plaintiff argues that TapLogic's "numerous corporate filings" with the States of California and Delaware demonstrate that TapLogic has its principal place of business in California. *See Mot.* 8. Defendant iHandy and TapLogic are "sister compan[ies]." *Id.* On December 6, 2016, TapLogic incorporated in Delaware. *See Declaration of Evan N. Spiegel*, Dkt. # 15-1 ("*Spiegel Decl.*"), ¶ 2, Ex. A. TapLogic then filed with the California Secretary of State a "Statement and Designation by Foreign Corporation" form, identifying its "Principal Executive Office" as an address in Los Altos, California, which is the same address listed for the Agent of the corporation, Jian Zhou. *Id.* ¶ 3, Ex. B. On October 9, 2018, TapLogic filed an updated Statement of Information, again attesting under penalty of perjury that the location of its

---

[1] "For the purposes of diversity jurisdiction, when a corporation is incorporated in the United States and has its principal place of business outside the United States, the corporation is only considered a citizen of the state in which it is incorporated." *In re Hydroxycut Mktg. & Sales Practices Litig.*, No. 09MD2087–BTM (AJB), 2010 WL 2998855, at *4 (S.D. Cal. July 29, 2010).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-10877 PSG (JPRx) | Date | March 19, 2020 |
|---|---|---|---|
| Title | Kim Kardashian West v. iHandy Ltd. et al. | | |

"Principal Executive Office" was in Los Altos, California. *Id.* ¶ 4, Ex. C. The complaint was filed on October 30, 2019. *See generally Compl.* Again, on November 15, 2019, TapLogic filed an updated statement listing its "Principal Executive Office" as an address in Fremont, California, and listing the address of its Chief Executive Officer, Secretary, and Chief Financial Officer, Kaixin Xu, as the Fremont address. *Id.* ¶ 5, Ex. D. The Court finds this to be persuasive evidence that TapLogic's executive officials direct operations from California, and have a principal executive office, or "nerve center," in California.

Defendants have submitted a declaration of Kaixin Xu, TapLogic's sole Director as of October 2018, and its CEO, CFO, and Secretary. *See Declaration of Kaixin Xu*, Dkt. # 20-1 ("*Xu Decl.*"), ¶ 3. Mr. Xu states that he has spent the overwhelming majority of his time working out of Beijing, China, and currently lives and works in China. *Id.* ¶ 4. The one or two other employees of TapLogic are also based in China. *Id.* ¶ 6. There are no TapLogic employees based in California or the United States, and since Mr. Zhou's resignation as Director of TapLogic at some unspecified time in late summer/early fall of 2018, "all management, direction, and control of corporate affairs and activities by TapLogic occurs in Beijing, China," under Mr. Xu's supervision. *Id.* ¶ 7. With respect to the corporate filings, Mr. Xu states that Mr. Zhou had listed his home address in Los Altos, California, as the corporate address for TapLogic. *Id.* ¶ 9. Mr. Xu states that when he became TapLogic's Director and executive officer in October 2018, he kept Mr. Zhou as Agent for Service of Process, and kept his home address in Los Altos. *Id.* ¶ 10. Mr. Xu states that he subsequently decided to change the address to the Fremont address, which is "merely a 'virtual office,'" which "provides mail handling and telephone answering services for TapLogic, and that "[n]o TapLogic directors, officers, or employees actually work out of this address in Fremont, California," and that TapLogic has no other offices in California. *Id.* ¶¶ 12–13. Defendants argue that their "virtual office" in Fremont is exactly the type of location that the Supreme Court rejected as a "nerve center." *Opp.* 5–6 (citing *Hertz Corp.*, 559 U.S. at 97 ("[I]f the record reveals attempts at manipulation—for example, that the alleged 'nerve center' is nothing more than a mail drop box, a bare office with a computer, or the location of an annual executive retreat—the courts should instead take as the 'nerve center' the place of actual direction, control, and coordination, in the absence of such manipulation.")).

While Plaintiff's government filings are not sufficient alone to prove the location of a corporation's headquarters, *see Hertz Corp.*, 559 U.S. at 97, the location of TapLogic's principal place of business remains far from clear. As Plaintiff points out, TapLogic has listed on multiple, recent filings with the California Secretary of State that its principal executive office, not just its California-based office, is located in California, and Defendants have provided only

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-10877 PSG (JPRx) | Date | March 19, 2020 |
|---|---|---|---|
| Title | Kim Kardashian West v. iHandy Ltd. et al. | | |

one declaration stating that TapLogic's officer and employees in fact live and work in China. *See Spiegel Decl.*, Exs. A–E; *Xu Decl.* In his declaration, Mr. Xu does not adequately explain why TapLogic repeatedly listed its principal executive office as located in California. Although Mr. Xu indicated that a California address had to be provided, the form distinguishes between the corporation's principal executive office and a principal office in California "if any." *See Reply* 4 n.4; *Xu Decl.* ¶ 9; *id.*, ¶ 9, Ex. 2. Mr. Xu explains that he decided to list a former employee/executive, Mr. Zhou, as the agent for service of process after his alleged resignation, but again this does not explain the decision to continue to list TapLogic's "principal executive office" as a specific location in Los Altos, California. Defendant has not identified an address or location of its headquarters, or sufficiently explained the discrepancies described above.

The Court must strictly construe the removal statute against removal, and if there is any doubt as to the existence of federal jurisdiction, the Court should remand the matter to state court. *See Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). Proof of citizenship "may consist of annual reports or other documents showing where the corporation's business activities are directed, including product development, exporting, marketing, production, research, service, etc." *See* Rutter Group Prac. Guide Fed. Civ. Pro. Before Trial § 2:1283. Ultimately, it is Defendants' burden to put forth competent proof that complete diversity is satisfied by a preponderance of the evidence, and based on the single declaration submitted by Defendants and the corporate filings submitted by Plaintiff, the Court concludes that there is substantial room for doubt as to the location of TapLogic's headquarters and thus "nerve center." Accordingly, Defendants have not carried their burden of demonstrating that complete diversity exists between the parties here.

    B.    <u>Preemption</u>

Plaintiff's complaint contains a single cause of action for infringement of Plaintiff's common law right of publicity under California law, and nowhere mentions copyright. *See generally Compl.* Defendant asserts that Plaintiff's claim nevertheless sounds in copyright, and thus "the right of publicity cause of action, the only asserted claim, is preempted by the Copyright Act." *See NOR* ¶¶ 12–18. The Court disagrees.

To properly remove a complaint on the basis of federal question jurisdiction, there must be "a federal question [] presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). A federal defense is insufficient, "even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Id.* at 393. However, there exists "an

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-10877 PSG (JPRx) | Date | March 19, 2020 |
|---|---|---|---|
| Title | Kim Kardashian West v. iHandy Ltd. et al. | | |

'independent corollary' to the well-pleaded complaint rule . . . known as the 'complete pre-emption' doctrine." *Id*. "If a court concludes that a plaintiff has 'artfully pleaded' claims," to avoid removal, "it may uphold removal even though no federal question appears on the face of the plaintiff's complaint," thus, removal is allowed "where federal law completely preempts a plaintiff's state-law claim." *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 475 (1998). The artful pleading doctrine "has substantive implications on the scope of federal jurisdiction and efficiency" and should be invoked "only in limited circumstances as it raises difficult issues of state and federal relationships and often yields unsatisfactory results." *Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1041 (9th Cir. 2003) (internal quotations omitted). "Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state-law claim is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar*, 482 U.S. at 393.

"Complete preemption (a jurisdictional issue) converts a well-pleaded state law claim into an inherently federal claim for jurisdictional purposes; defensive preemption (a substantive issue) does not enable removal." *Hall v. N. Am. Van Lines, Inc.*, 476 F.3d 683, 689 n. 8 (9th Cir. 2007). Thus, the issue is whether Plaintiff's state law claim is completely preempted, "[e]ven if the claims are not completely preempted under this standard, thereby precluding federal jurisdiction, Defendants may still seek to present a federal preemption defense in the Superior Court." *Coyle v. O'Rourke*, No. LA CV14-07121 JAK, 2015 WL 58700, at *5 (C.D. Cal. Jan. 5, 2015).

The Ninth Circuit applies a two-part test to determine whether a claim is preempted by Section 301 of the federal Copyright Act. First, the Court must "decide whether the 'subject matter' of the state law claim falls within the subject matter of copyright as described in 17 U.S.C. §§ 102 and 103." *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1010 (9th Cir. 2017) (quoting *Laws v. Sony Music Entm't, Inc.*, 448 F.3d 1134, 1137 (9th Cir. 2006) (internal quotations omitted)). "Second, assuming it does," the Court must "determine whether the rights asserted under state law are equivalent to the rights contained in 17 U.S.C. § 106, which articulates the exclusive rights of copyright holders." *Id*. (internal quotations omitted). The Court finds the first step determinative, and so does not reach the second step.

   *i.*   *Subject Matter of State Law Claim*

The Copyright Act "provides that 'the owner of copyright . . . has the exclusive rights to do and to authorize' others to display, perform, reproduce or distribute copies of the work and to prepare derivative works." *Jules Jordan Video, Inc. v. 144942 Canada Inc.*, 617 F.3d 1146,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-10877 PSG (JPRx) | Date | March 19, 2020 |
|---|---|---|---|
| Title | Kim Kardashian West v. iHandy Ltd. et al. | | |

1152 (9th Cir. 2010) (quoting 17 U.S.C. § 106). Section 102 provides in part that copyright protection subsists "in original works of authorship fixed in any tangible medium of expression." 17 U.S.C. § 102. Section 103 provides that "the subject matter of copyright as specified by section 102 includes compilations and derivative works." 17 U.S.C. § 103(a).

The Ninth Circuit has explained that while a photograph itself, "as a pictorial work of authorship," is subject matter protected by the Act, where the basis of a claim is "not the publication of the photograph itself, as a creative work of authorship," but rather "the use of [persons'] likenesses and their names pictured in the published photograph," it is not a work of authorship under the Act. *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1003 (9th Cir. 2001). This is because "the name and likeness of a celebrity or other individual," is "not a 'work of authorship' under the Act." *Id.* at 1003–04 (quoting 1 Nimmer on Copyright § 1.01[B][1][c] at 1–23 (1999)). Such a work "does not become a work of authorship simply because it is embodied in a copyrightable work such as a photograph." *Id.* Courts have held that where it is the use of one's likeness to promote another's business, rather than the publication of photographs themselves, that form the basis of a claim, the facial subject matter of the Complaint is not copyrightable. *See id.*; *Coyle v. O'Rourke*, Case No. LA CV14-07121 JAK (FFMx), 2015 WL 58700, at *2, 4–11 (C.D. Cal. Jan. 5, 2015) (no preemption of right of publicity claim arising from defendants' unauthorized use of plaintiffs' images and likeness, embodied in photographs, for commercial purposes); *Timed Out, LLC v. Youabian, Inc.*, 229 Cal. App. 4th 1001, 1013 (2014). "The crux of the issue is thus deciding when a publicity-right claim seeks to vindicate misuse of an individual's likeness, as opposed to merely interfering with the distribution, display, or performance of a copyrighted work." *Maloney*, 853 F.3d at 1012–13. "[A] publicity-right claim is not preempted when it targets non-consensual use of one's name or likeness on merchandise or in advertising." *Id.* at 1011.

*Downing* is instructive. In that case the appellants brought claims for appropriation of likeness, contending that the defendant clothing retailer placed a photograph of them in a catalogue without their permission and identified them by name, and used this in an advertising campaign which included the selling of t-shirts exactly like those worn by the plaintiffs in the photograph. *Downing*, 265 F.3d at 999–000, 1004–05. The Ninth Circuit concluded the claim did not fall within the subject matter of copyright. *Id.* The "plaintiffs sustained injury to their individual 'personas' because their likenesses were exploited commercially without their consent. The plaintiffs were not seeking to use the right of publicity simply to prevent 'publication' of an artistic, visual work." *Maloney*, 853 F.3d at 1013. Critically, the photographs were "used in advertising," and the campaign "had suggested that the surfers had endorsed [the defendant's] t-shirts." *Id.* at 1013–14 (quoting *Laws*, 448 F.3d at 1141). This is in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-10877 PSG (JPRx) | Date | March 19, 2020 |
|---|---|---|---|
| Title | Kim Kardashian West v. iHandy Ltd. et al. | | |

contrast to when "the tort action challenges control of the artistic work itself," or involves "the mere republication" or distribution of the photograph or work of authorship, not exploitation of likeness in advertising. *See id.*; *see, e.g.*, *Fleet v. CBS, Inc.*, 50 Cal. App. 4th 1911 (1996) (rejecting plaintiffs' argument that by airing the motion picture that used their names, pictures, and likenesses, without their consent, defendant violated their right of publicity, because the claims sought "only to prevent CBS from reproducing and distributing [plaintiffs' dramatic] performances in the film"); *Jules Jordan Video, Inc.*, 617 F.3d at 1154.

Here, as in *Downing*, the basis of Plaintiff's claim is that her recognizable image and likeness was used for commercial purposes, to sell Defendants' App. *See Downing*, 265 F.3d at 1003. Although Plaintiff's allegations in part involve the misappropriation of a photograph, Plaintiff alleges that her likeness was used non-consensually in advertisements of the Defendants' product in order to capitalize on her celebrity persona, and especially her popularity on Instagram, and this suggested her association with the product. *See Mot.* 13; *Compl.* ¶¶ 1–6, 23, 28–34; *cf. Downing*, 265 F.3d at 1003. It is the unauthorized use of Plaintiff's recognizable likeness for commercial purposes to attract consumers and social media users, given Plaintiff's celebrity persona and substantial Instagram followers, to promote Defendants' product, that is the crux of the complaint. *See Mot.* 13; *Maloney*, 853 F.3d at 1016. Defendants rely on *Laws* to argue that Plaintiff "challenges the control of the artistic work itself," and alleges solely misuse of an attribute contained in the Photograph. *Opp.* 10; *Laws*, 448 F.3d at 1134. But Defendants misconstrue Plaintiff's claim. Defendants' use was not "mere reproduction of a copyrightable work," as the product itself, but utilized for the purpose of advertising to attract attention to a separate product. *See Reply* 8. It is her "likeness and celebrity recognition that was conspicuously exploited to attract consumers' attention to Defendants and its' separate products" that form the basis of her claim. *See id.*; *see also Mindlab Media, LLC v. LWRC Int'l*, LLC, No. CV 11-3405-CAS FFMX, 2013 WL 1688309, at *5 (C.D. Cal. Apr. 15, 2013) ("Although plaintiffs also bring claims for copyright infringement, the basis of plaintiffs' misappropriation of likeness claims under California law is their contention that defendant misappropriated plaintiff Machowicz's image and likeness for defendant's own commercial gain.").

The Court concludes that the subject matter of Plaintiff's complaint is the misuse of her likeness and persona, rather than copyrightable subject matter within the scope of 17 U.S.C. §§ 102 and 103. Thus, the first step of the two-step preemption inquiry is not met, and it is not necessary to consider the second step. *See Laws*, 448 F.3d at 1138.

To show complete preemption, a defendant must show that Congress has "so completely pre-empt[ed] a particular area that any civil complaint raising this select group of claims is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-10877 PSG (JPRx) | Date | March 19, 2020 |
|---|---|---|---|
| Title | Kim Kardashian West v. iHandy Ltd. et al. | | |

necessarily federal in character." *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 945 (9th Cir. 2009) (citing *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 63–64 (1987)). Defendants have failed to demonstrate that the subject matter asserted by the complaint is "necessarily" equivalent to that protected by federal copyright law, and thus they have failed to carry this burden. *See Gaus*, 980 F.2d at 566 (federal courts should remand cases "if there is any doubt as to the right of removal"); *Coyle*, 2015 WL 58700, at *11.

IV.     Conclusion

The Court concludes that neither of Defendants' asserted bases of removal is sufficient to establish federal jurisdiction. Accordingly, the Court concludes that this action was improperly removed. The Court **GRANTS** Plaintiff's motion to remand, and **REMANDS** the action to state court.

**IT IS SO ORDERED**.